**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Audi Romelio G.R.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

No. 0:26-cv-04288 (KMM/JFD)

---

Petitioner Audi Romelio G.R. ("Petitioner" or "Audi") has been detained by federal immigration authorities since August 13, 2026. Audi brought this action to challenge his ongoing detention. (Pet., Dkt. 1.) He claims that his arrest was unlawful because he was arrested without a valid warrant and without a lawful basis for a warrantless arrest. (*Id.* ¶¶ 10, 79–88.) In addition, he claims that he is being detained in violation of the Due Process Clause of the Fifth Amendment because Respondents have made no individualized inquiry into whether his detention is necessary to ensure his appearance in immigration court or to protect the community. (*Id.* ¶¶ 8–9, 60–78.)

Audi seeks a writ of habeas corpus requiring his immediate release from custody or, in the alternative, an order compelling Respondents to provide him with a bond hearing to assess the need for his ongoing detention. (*Id.* ¶¶ 11–12, 94–97.) Respondents oppose the petition, arguing that under the relevant provisions of the Immigration and Nationality Act ("INA"), Audi is subject to mandatory detention until the conclusion of removal proceedings, his arrest complied with governing law, and his due process claim is

foreclosed by existing precedent. (Dkt. 5.) For the reasons that follow, the Petition is granted on Audi's unlawful arrest claim and Respondents are ordered to immediately release him from immigration custody.

**BACKGROUND**

Audi is a citizen of Guatemala. (Dkt. 1 ¶ 2.) In September 2021, he entered the United States and presented himself to immigration officials. (*Id.* ¶ 14.) He has lived in the United States since then, residing in Chicago, Illinois with his wife and two daughters (*Id.* ¶ 2.) He has no criminal record. (*Id.* ¶ 14; *see also* Exhibit A, Dkt. 1-1)

On August 11, 2026, Audi was one of two passengers in a car pulled over for a traffic violation by an Iowa State Patrol officer in Clarke County, Iowa. (Dkt. 1 ¶ 15.) Audi provided his Guatemalan passport as identification but declined to answer additional questions presented by the officer. (*Id.* ¶ 15.) The Patrol officer then contacted ICE Enforcement and Removal Operations ("ERO") to determine Audi's immigration status. (*Id.* ¶ 16; Dkt. 5 at 2.) The ERO officer conducted a telephone interview with Audi, which revealed that Audi was a citizen of Guatemala who did not possess lawful immigration status. (Dkt. 5 at 2.) The same day, the Iowa State Patrol officer detained Audi and brought him to the Hardin County Jail in Eldora Iowa. (*Id.* ¶ 16.)

On August 12, 2026, a Supervisor Detention and Deportation Officer issued a Form I-200 warrant for Audi's arrest. (Dkt. 5 at 2.) The following day, Respondents served Audi with the warrant and took him into custody, transferring him from the Clarke County Jail to the ICE Office in Des Moines, Iowa. (*Id.*) On August 13, once he was in ICE custody, Respondents issued a Notice to Appear ("NTA") and served it upon Audi, charging him

with inadmissibility under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). (*Id.*; *see also* Exhibit C, Dkt. 5-4.).

At the time of filing his Petition, Audi was being detained at the Adult Detention Center in Alber Lea, MN. (Dkt. 1 ¶ 1.)

**DISCUSSION**

District courts may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## I. Legal Standards

Petitioner claims that he is entitled to an order requiring Respondents to immediately release him from custody because he was arrested unlawfully. There are "two mechanisms by which 'it is appropriate to arrest an alien during the removal process.'" *Cesar F.F. v. Blanche*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 3 (D. Minn. June 2, 2026) (quoting *Arizona v. United States*, 567 U.S. 387, 407 (2012)). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, the law allows for a warrantless arrest in limited circumstances. *See* 8 U.S.C. § 1357(a)(2).

Under the first mechanism, immigration authorities may arrest a noncitizen for the purposes of removal proceedings pursuant to an administrative warrant known as a Form I-200, Warrant of Arrest. 8 C.F.R. § 236.1(b)(1). Ordinarily, Form I-200 warrants are issued in connection with proceedings initiated pursuant to 8 U.S.C. § 1226, which establishes a

"discretionary detention framework" under which persons detained receive bond hearings prior to an order requiring detention. *See Jose J.O.E. v. Bondi*, 797 F. supp. 3d 957, 969 (D. Minn. 2025). The discretionary detention contemplated by this statute also allows the government to "release the alien on . . . bond of at least $1,500 . . . or . . . conditional parole." 8 U.S.C. § 1226(a)(2).

A Form I-200 warrant is valid when it is issued at the same time as ICE issues a NTA, or any time after the NTA has been issued. *Id.*; *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) ("Respondents may arrest a noncitizen using a Form I-200 only if the Form I-200 issues at the same time or after the Department of Homeland Security issues an NTA."); *Armindo H.V. v. Blanche*, No. 26-cv-3950 (NEB/EMB), Dkt 10 at 4 (D. Minn. Sept. 28, 2026) (concluding that sequencing of issuance matters, and that an NTA must be issued before a Form I-200. The Form I- 200 warrant empowers ICE to arrest noncitizens *during* removal proceedings, and the NTA is what initiates removal proceedings.").

Courts have held that an arrest is made "pursuant to" an I-200 warrant when the warrant is issued prior to that arrest. *Makitio G. A., v. Blanche*, No. 26-cv-2200 (ECT/DLM), 2026 WL 1584457, at *4 (D. Minn. May 22, 2026) ("[I]f a removal warrant for [the noncitizen] was not procured until ... after his ... arrest, that means he was arrested without a warrant."), *R&R adopted*, 2026 WL 1591270 (D. Minn. June 3, 2026); *cf. Pina C.D.B. v. Bondi*, No. 26-cv-1929 (KMM/DJF), 2026 WL 810676, at *2 (D. Minn. Mar. 24, 2026) (collecting cases holding 8 U.S.C. § 1226(a)'s "[o]n a warrant" language to require the issuance of a warrant prior to arrest).

The second means of arresting a noncitizen is under the warrantless-arrest authority provided in 8 U.S.C. § 1357. In the provision relevant here, such an arrest is permissible only if there is "reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). By its plain language, § 1357(a)(2) contains two separate requirements: (1) that the individual is in the United States in violation of immigration laws; and (2) that he is likely to escape before a warrant can be obtained for his arrest. And in this context, "the term 'reason to believe' . . . means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

**B. Analysis**

Audi argues that his arrest complied with neither the first nor the second mechanism because (1) the I-200 warrant was not issued at the same time as the NTA or after it, and (2) there was no basis for a warrantless arrest. (Dkt. 7 at 2, 4–6.) Respondents hang their hats on the first mechanism and make no argument concerning the second. (Dkt. 5 at 9 ("since Respondents did not conduct a warrantless arrest, section 1357(a)(2) inapplicable.").[1] So, the focus is on whether Petitioner was arrested on a valid warrant.

[1] Because Respondents present no argument regarding the application of § 1357(a)(2) to the facts of this case, they have waived that issue. The Court suspects Respondents took this approach because the arresting officers took the step of obtaining an I-200 warrant first and it was issued prior to Audi's arrest. Regardless of the reason, there is no basis in the record from which the Court could conclude that, Respondents had the authority to make an arrest in compliance with § 1357(a)(2).

The Supreme Court has not addressed whether an I-200 warrant issued before an NTA can legally support an arrest of a noncitizen for purposes of removal proceedings. Neither has the Eighth Circuit Court of Appeals. But numerous decisions from the District of Minnesota have held that an arrest of a noncitizen is invalid when the NTA is not issued prior to or contemporaneously with the issuance of a Form I-200. *Tha I. v. Blanche*, No. 26-CV-3516 (LMP/DLM), 2026 WL 3093493, at *1 (D. Minn. Oct. 16, 2026); *Alejandro C. G. v. Blanche*, No. 26-cv-3117 (ECT/EMB), 2026 WL 2838175, at *2 (D. Minn. Sept. 22, 2026) (collecting cases). The Court finds these cases persuasive and follows them here.

There is no dispute that the I-200 Warrant for Audi's arrest did not issue "at the same time as the issuance of the notice to appear, or at any time thereafter." 8 C.F.R. § 236.1(b)(1). The warrant was issued on August 12, 2026, while the NTA did not issue until August 13, 2026. Therefore, because the issuance of an NTA is a prerequisite to the commencement of removal proceedings, the authority to issue a warrant under § 236.1(b)(1) had not yet arisen. As courts in this District have recognized, "an NTA is a case-initiating pleading - like an indictment in a criminal case - that serves as the basis for commencing a grave legal proceeding." *Alejandro C.G.*, 2026 WL 2838175, at *3 (quoting *Jesus F.D. v. Mulin*, No. 26-cv-2486 (PJS/DTS), slip op. at 5-6 (D. Minn. June 10, 2026), ECF No. 10) (cleaned up). Accordingly, a warrant issued before the commencement of removal proceedings "purports to exercise authority that does not yet exist." *Id.* Because the Form I-200 warrant was issued before the Notice to Appear, it was not authorized by § 236.1(b)(1) and was therefore invalid.

Because Respondents arrested Audi on an I-200 warrant that was issued long before issuance of an NTA, the warrant was not a valid exercise of ICE's arrest authority and was noncompliant with the clear language of the governing regulation.

Anticipating Petitioner's argument regarding the sequencing of the NTA and Form I-200, Respondents ask the Court to dismiss it as a mere red herring. (Dkt. 5 at 10.) It is not. They argue that when DHS has established probable cause to remove a noncitizen based on existing evidence such as a biometric confirmation of identity, immigration records, or voluntary statements, "the legality of the arrest turns on the existence of statutory authority and probable cause, not on the sequence which the I-200 and NTA are served. *Id*.

To support this interpretation, Respondents rely on the reasoning from *Gagea v. Maldonado* No. 26-CV-4817 (RPK), 2026 WL 2859032 (E.D.N.Y. Sept. 23, 2026). In *Gagea*, the court found that "the sequencing [of the NTA and I-200] does not implicate a statutory right because [§1236.1(b)(1)] is silent on the sequencing of a warrant-based arrest and the issuance of an NTA." *Id.* at *2. Respondents maintain that 8 U.S.C. § 1226(a), rather than 8 C.F.R. § 236.1(b)(1), supplies the relevant source of DHS's arrest authority. §1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." (Dkt. 5 at 10.) Respondents contend that DHS may issue a Form I-200 whenever it has probable cause to believe that an individual is removable, regardless of whether removal proceedings have formally commenced because the statute does not expressly condition that authority on the prior or contemporaneous issuance of an NTA. *Id*

The Court does not share Respondents' narrow interpretation. Simply put, there is no conflict between the statute and the regulation. Section 1226(a) provides the authority for DHS to effectuate warrant-based arrests, and § 236(b)(1) prescribes the timing for executing such warrants. Nothing within the regulation prevents DHS from engaging in the meticulous evidence gathering needed to establish probable cause, nor does the regulation prevent DHS from preparing a warrant based on that probable cause determination. All that § 236(b)(1) requires is that before an I-200 is issued DHS must contemporaneously issue an NTA "because the issuance of a NTA is a prerequisite to the commencement of removal proceedings. *Alejandro C. G. v. Blanche*, No. 26-cv-3117 (ECT/EMB), 2026 WL 2838175, at *3 (D. Minn. Sept. 22, 2026).

Further the Court is not persuaded that *Gagea* supports a different result. First, the timing of the arrest and issuance of the NTA in *Gagea* differ significantly from those alleged in this case. There, the NTA was issued approximately four hours after the petitioner's arrest. *Gagea, 2026 WL 2859032, at* *1. Here, Respondents did not issue Audi's NTA until an full day after his arrest. (Dkt. 5 at 2.) That factual distinction is material. While one could argue that a four-hour delay is contemporaneous enough to satisfy 8 C.F.R. § 236.1(b)'s requirement that the warrant issue "at the time of issuance" of the NTA, a delay of an entire day is not.

More critically, the Court does not agree that the sequence of events is irrelevant so long as DHS ultimately obtains authority to proceed. The plain language of 8 C.F.R § 236.1(b) is quite clear. It contemplates that an NTA will issue before, or contemporaneously with, an arrest pursuant to a I-200. Nothing in the regulation suggests that DHS may arrest

an individual under a Form I-200 and then obtain the authority to do so by issuing an NTA several hours later. And accepting Respondents' suggestions to the contrary would render that provision of the statute superfluous. In line with other courts in this District, the Court finds "that [ICE] may arrest a non-citizen using a Form I-200 *only if* the Form I-200 issues at the same time or after DHS issues an NTA." *Armindo H.V. v. Blanche*, No. 26-cv-3950 (NEB/EMB), slip op. at 4 (D. Minn. Sept. 28, 2026) (emphasis added) (quoting *Vladimir G. v. Easterwood*, No. 26-CV-2971 (JMB/ECW), 2026 WL 1786418, at *2 (D. Minn. June 22, 2026)).

Alternatively, Respondents suggest that ICE/ERO did not need a warrant to arrest Audi because he is subject to mandatory detention under § 1225(b)(2)(A), as interpreted by *Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026)*. (Dkt. 5 at 18–19.) However, this Court agrees with others that have held, "*Avila* did not decide the source or limits of the Government's authority to make a warrantless interior arrest." *Richard E.N.B. v. Easterwood*, No. 26-cv-2972 (JWB/LIB), 2026 WL 3033824, at *5 (D. Minn. Oct. 9, 2026). "The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists," and "[o]thers have ordered release after finding that the Government lacked statutory authority for the arrest." *Id.* (citing cases). This Court agrees with the "great weight of persuasive authority from this District [that] supports the legal conclusion that a warrantless arrest under 8 U.S.C. § 1225(b)(2) must comply with § 1357." *Elder C.C. v. Blanche*, No. 26-cv-3832 (ECT/ECW), 2026 WL 3025948, at *2 (D. Minn. Oct. 8, 2026) (citing cases).

Finally, relying on the Seventh Circuit's decision in *Arias v. Rogers*, 676 F.2d 1139, 1143–44 (7th Cir. 1982), Respondents argue that even if Petitioner's arrest was unlawful, he is foreclosed from challenging his arrest in a habeas case given that he is now in removal proceedings before the immigration court. (Dkt. 5 at 4–8.) This Court has previously rejected the government's argument that an unlawful arrest cannot result in relief from custody in a habeas proceeding. *Emily Andreina N.V. v. Blanhce*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4–5 (D. Minn. July 31, 2026). And like other courts in this District, the Court "decline[s] to adopt *Arias* for the propositions that a habeas petitioner in removal proceedings cannot challenge an unlawful arrest or that release is not the appropriate remedy." *Elder C.C.*, 2026 WL 3025948, at *3; *Wilfredo C.M. v. Blanche*, No. 26-cv-3966 (JRT/DJF), 2026 WL 2875061, at *2 (D. Minn. Sept. 24, 2026) (same).

Based on the discussion above, the Court concludes that Petitioner Audi Romelio G. R. was not arrested pursuant to a warrant and his warrantless arrest did not comply with the requirements of 8 U.S.C. § 1357(a)(2). As a result, the Court grants Audi's Petition and orders Respondents to release him from custody.[2]

**ORDER**

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Audi Romelio G. R..'s Verified Petition for a Writ of Habeas (Dkt. 1) is **GRANTED**.

2. Respondents shall release Petitioner Audi Romelio G. R. from immigration custody within 24 hours of the issuance of this order.

[2] Given this conclusion, the Court need not address the question of whether Audi's detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.

3. Respondents shall file a status report with the Court within 48 hours of Petitioner's release advising that it has occurred.

**Let Judgment be entered accordingly**.

Date: November 20, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge